**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 5, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHARLES TAYLOR,

Defendant - Appellant.

No. 05-3417
(D.C. Nos. 05-CV-3195-MLB and
01-CR-10136-MLB)
(D. Kan.)

---

**ORDER DENYING A CERTIFICATE OF APPEALABILITY**

---

Submitted on the brief:

Charles Taylor, filed a brief pro se.

---

Before **HARTZ**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Charles Taylor pleaded guilty in the United States District Court for the District of Kansas to bank robbery. *See* 18 U.S.C. § 2113(a). After his direct appeal was denied, *United States v. Taylor*, 353 F.3d 868 (10th Cir. 2003), he filed a motion for habeas relief under 28 U.S.C. § 2255, alleging a Speedy Trial Act violation and several instances of ineffective assistance of counsel. The

district court denied the motion, and Mr. Taylor now seeks a certificate of appealability (COA) from us. *See* 28 U.S.C. § 2253(c). We hold that Mr. Taylor cannot obtain a COA for his Speedy Trial Act claim because it alleges only a statutory violation. The ineffective-assistance claims are clearly without merit, so we deny a COA for them as well, and dismiss the appeal.

## I.    BACKGROUND

Mr. Taylor was indicted on November 27, 2001, on a single count of bank robbery. After denial of his motion to dismiss the indictment for an alleged Speedy Trial Act violation, he pleaded guilty to the indictment, conditioned on his right to appeal. Before sentencing he objected to the conclusion in the presentence report (PSR) that he was a career offender. The district court overruled the objection and sentenced him to 170 months' imprisonment. Judgment was entered on January 21, 2003. On direct appeal Mr. Taylor, still represented by his trial counsel, raised only the alleged Speedy Trial Act violation, and the appeal was denied. *See Taylor*, 353 F.3d 868.

In May 2005 Mr. Taylor filed a motion for habeas corpus relief under 28 U.S.C. § 2255. Reading his pro se habeas motion liberally, *see Brown v. Perrill*, 21 F.3d 1008, 1009 (10th Cir. 1994), we believe that he is claiming six violations of his rights: (1) a Speedy Trial Act violation; and five instances of ineffective assistance of counsel—(2) counsel failed to advise him of the potential effect of a pro se motion on a Speedy Trial Act claim; (3) counsel failed to advise the

-2-

appellate court of this failure to give necessary advice; (4) counsel informed him that he was facing only 57 to 78 months' imprisonment, when, in fact, the Guidelines range was 151 to 188 months' imprisonment; (5) counsel failed to challenge on direct appeal his classification as a career offender; and (6) counsel failed to challenge the indictment as defective because it did not allege that he robbed the bank knowingly or intentionally.

The district court denied Mr. Taylor's Speedy Trial Act claim on the ground that it was foreclosed by our decision on direct appeal. The government was ordered to respond to the remaining claims. It did so, and the district court then rejected those claims as well. The district court did not rule on Mr. Taylor's application for a COA, so we deem it denied. *See United States v. Kennedy*, 225 F.3d 1187, 1193 n.3 (10th Cir. 2000).

## II. DISCUSSION

"A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This means that the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that

-3-

the district court's resolution of the constitutional claim was either "debatable or wrong." *Id*.

      **A.    Speedy Trial Act**

The district court denied Mr. Taylor's Speedy Trial Act claim because it was foreclosed by his direct appeal of the issue. He contends that the arguments he now raises were not addressed on direct appeal. But even if the arguments were not foreclosed and have merit, we cannot grant a COA because he alleges only a statutory violation. Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a COA may issue only when the applicant "has made a substantial showing of the denial of a *constitutional* right." 28 U.S.C. § 2253(c)(2) (emphasis added). This is in contrast to the pre-AEDPA standard, announced in *Barefoot v. Estelle*, that the habeas petitioner had to make a "substantial showing of the denial of a *federal* right." 463 U.S. 880, 893 (1983) (emphasis added; internal quotation marks and brackets omitted); *see Slack*, 529 U.S. at 483 ("Congress had before it the meaning *Barefoot* had given to the words it selected; and we give the language in § 2253(c) the meaning ascribed it in *Barefoot*, with due note for the substitution ofSeptember 15, 2006 the word 'constitutional.'"). Thus, a COA cannot issue when the habeas petitioner has shown the denial of only a statutory right. *See United States v. Gordon*, 172 F.3d 753, 754-55 (10th Cir. 1999); *United States v. Cepero*, 224 F.3d 256, 265 (3d Cir. 2000) (en banc) ("Section 2255 petitioners may allege and have adjudicated non-constitutional

issues in district court[,]" but "the courts of appeals under the post-AEDPA version of § 2253(c)(2) have limited jurisdiction over unsuccessful § 2255 petitions."); *see generally* 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 35.4b, at 1572-73 n.22 (4th ed. 2001) (citing cases). *But cf.* 1 Hertz & Liebman, *supra*, § 9.1, at 449 (suggesting that AEDPA uses "'constitutional violations'" as "a rough shorthand for the jurisdiction headings in the relevant, and unamended, provisions of the habeas corpus statute, namely, 'violation[s] of the Constitution *or* laws *or* treaties of the United States'"). In other words, no matter how clearly the § 2255 movant can show that the district court erred in denying a statutory claim in his habeas petition, he is not entitled to a COA to have his claim heard on appeal.

## B. Ineffective Assistance of Counsel

To prevail on an ineffective-assistance-of-counsel claim, Mr. Taylor must show that his "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. Our review is "highly deferential" and we "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

-5-

challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotation marks omitted).

### 1. Alleged Failures with Respect to Speedy Trial Act Claim

Mr. Taylor raises two related ineffective-assistance claims arising out of his Speedy Trial Act claim. First, he contends that while he was a pretrial detainee, he filed a pro se motion for habeas relief under 28 U.S.C. § 2241 and informed his counsel that he had done so. "Counsel for the plaintiff failed to notify the plaintiff that any motions filed stopped the clock for [Speedy Trial Act] purposes," he asserts, and the "14 days it took the court to deny the motion could have totally changed the outcome of the motion to dismiss." R. Vol. I Doc. 55 at 6. Second, he contends that if counsel had placed this information before this court on appeal, "the outcome of the appellate court[']s decision may have been different." *Id*.

Both claims lack merit. We cannot fault his trial counsel for failing to anticipate (1) that his client would file a pro se pleading and (2) that the pleading would prove relevant (much less critical) to a future speedy-trial motion. Nor can we fault counsel for failing to advise the court of these matters on direct appeal, because Mr. Taylor does not explain (nor do we see) how doing so would have affected the outcome on appeal. No reasonable jurist would rule in Mr. Taylor's favor on either claim.

## 2.    Misinformation about Sentencing Range

Next, Mr. Taylor complains that his attorney told him that he was facing a sentence of imprisonment of 57 to 78 months, when the sentencing range under the Sentencing Guidelines turned out to be 151 to 188 months. Mr. Taylor says that he "wanted to go to trial . . . [b]ut his counsel advised him he was facing a much lesser amount of time th[a]n he actually received." *Id*. at 6-7.

"In the guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, the defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005). Here, even if we assume that counsel's performance was deficient in estimating the sentencing range, Mr. Taylor has not shown that he was prejudiced by the failure. The district court states in its order denying habeas relief:

> The plea was made pursuant to an agreement in which defendant acknowledged that he faced a statutory maximum sentence of imprisonment for up to twenty years. The agreement also provided that "the United States has advised this defendant that the matter of sentence is entirely within the purview of the sentencing court, and that the United States made no promises to this defendant or his attorney, regarding what sentence might be imposed." . . . [T]he defendant also signed and swore to a petition to enter a plea of guilty which stated that the maximum sentence was twenty years imprisonment and contained defendant's acknowledgment that "I know the sentence I will receive is solely a matter within the control of the Judge." A transcript of the plea was not prepared but the court is confident that he followed his usual procedure of explaining the

> maximum penalty to the defendant, ensuring that defendant understood the maximum penalty and that no promises had been made to him regarding a specific sentence. Defendant does not contend otherwise.

R. Vol. I Doc. 60 at 1-2. Because Mr. Taylor has not pointed to anything in the record to the contrary, we will accept the district court's description of the plea agreement. *See United States v. LaHue*, 261 F.3d 993, 1015 (10th Cir. 2001) (defendant did not cite to documents in voluminous record to support claim so we "defer to the district court's rulings" (internal quotation marks omitted)). In virtually the same circumstances in another case, we held that the defendant's "admissions alone belie [his] claim that he was prejudiced by counsel's failure to accurately predict the impact of his criminal history." *Silva*, 430 F.3d at 1100. The district court's denial of relief on this claim would not be debatable among reasonable jurists.

### 3. Failure to Challenge Career-Offender Classification

Mr. Taylor contends "that his counsel failed to raise his [career-offender] enhancement in direct appeal when the plaintiff requested he do so." R. Vol. I Doc. 55 at 7. He acknowledges that at sentencing his attorney "objected successfully to 2 out of 3 of the enhancements [proposed by the presentence report]" but was unsuccessful in challenging his classification as a career offender. *Id*. The district court ruled that this ineffectiveness claim had no merit.

> Defendant claims that both of his 1992 drug trafficking convictions are "invalid" because his civil rights were restored and further that

his 1994 drug trafficking conviction was for a misdemeanor.  He presents no evidence to support his former contention.  His latter contention is conclusively refuted by the court documents admitted without objection at sentencing . . . .

Thus, defendant's classification as a career offender was correct.  His counsel was not ineffective for failing to raise defendant's career offender status on direct appeal.

*Id*. Doc. 60 at 3-4.  No reasonable jurist would have ruled otherwise.

### 4.    Failure to Challenge Indictment

Finally, Mr. Taylor contends that his counsel was ineffective for failing to argue that the "indictment was defective when it failed to allege the plaintiff robbed the Bank of America knowingly or intentionally or by words of similar import."  *Id*. Doc. 55 at 7.  The indictment states:

[T]he defendant, CHARLES TAYLOR, did by force and violence or intimidation, take from the person or presence of employees of the Bank of America . . . approximately One Thousand Three Hundred Twenty-seven Dollars ($1,327.00) in money belonging to and in the care, custody, control, management and possession of Bank of America, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

In violation of Title 18, United States Code, Section 2113(a).

*Id*. Doc. 10.  The relevant portion of 18 U.S.C. § 2113(a) states:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both.

Although this statute does not specify a *mens rea*, the Supreme Court has stated that it "requir[es] proof of *general intent*—that is, that the defendant possessed knowledge with respect to the *actus reus* of the crime." *Carter v. United States*, 530 U.S. 255, 268 (2000); *see United States v. Zunie*, 444 F.3d 1230, 1234 (10th Cir. 2006) ("A specific intent crime is one in which an act was committed voluntarily and purposely with the specific intent to do something the law forbids. In contrast, a general intent crime is one in which an act was done voluntarily and intentionally, and not because of mistake or accident." (internal quotation marks omitted)).

Nevertheless, counsel was not ineffective for failing to challenge the omission from the indictment of an explicit allegation of general intent. Ample authority supports the validity of the indictment. Courts have held that when commission of the charged acts strongly implies the actor's general intent, the indictment need not specifically allege that intent. For example, when an indictment for illegal reentry under 8 U.S.C. § 1326(a) fails to allege that the deported alien knowingly or voluntarily reentered the country, sister circuits have nevertheless upheld the indictment because it may be "presum[ed] that a defendant who is found in the United States willfully and knowingly *acted* in order to enter this country. Therefore, alleging that the defendant is a deported alien subsequently found in the United States without permission suffices to allege general intent." *United States v. Rivera-Sillas*, 417 F.3d 1014, 1020 (9th

Cir. 2005) (internal quotation marks and brackets omitted); *accord United States v. Berrios-Centeno*, 250 F.3d 294, 299 (5th Cir. 2001). *Cf. United States v. Henry*, 288 F.3d 657, 662-63 (5th Cir. 2002) (following *Berrios-Centeno* but with some reservations). More than half a century ago we made essentially the same point: "Where the act charged necessarily includes a general intent or is in its very nature unlawful, it need not be alleged that the act was done unlawfully." *Braswell v. United States*, 224 F.2d 706, 709 (10th Cir. 1955) ("[T]he only intent necessary is the intent to accomplish the act of transportation across a state line, and the statement of the act itself implies such intent."). This analysis would apply to Mr. Taylor's offense. As the Ninth Circuit said with respect to a conviction under 18 U.S.C. § 2113(a), "the requisite criminal intent [can be inferred] from the fact that the defendant took the property of another by force and violence, or intimidation." *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993); *see United States v. Mozee*, 405 F.3d 1082, 1087 (10th Cir. 2005) ("As a general intent crime, aggravated assault allows the element of intent to be inferred from doing the act constituting the offense charged, such as pointing a loaded gun at a victim."). In light of this authority, Mr. Taylor's attorney did not render deficient representation by declining to challenge the indictment for failure to allege general intent explicitly, particularly when (because the government could reindict with the *mens rea* element explicitly included in the indictment) it is not at all clear how even a successful challenge would have ultimately

benefitted Mr. Taylor. *See United States v. Magleby*, 420 F.3d 1136, 1143 (10th Cir. 2005) (counsel not deficient in failing to raise a claim when there is a lack of authority, especially Supreme Court and Tenth Circuit authority, to support the claim).

## III.   CONCLUSION

We DENY a COA and DISMISS the appeal.